Good morning, Your Honors. If it pleases the Court, Frank Sproul is appearing for the petitioner. Obviously, in this case, there's two separate issues. The initial issue, of course, is the magistrate who dismissed this case for lack of jurisdiction. And if the magistrate is right, I don't need 15 minutes. I have to concede that. My – the district court essentially relied on Morales-Izcuarto, which really is Morales-Izcuarto III. Which – in which he said that you should have filed a direct petition for review of the reinstated order, and therefore, you could have brought up all of these reliance and constitutional issues, and I think that's not really the case. In Morales-Izcuarto, this also happened – the Real ID Act intervened during that case. So what happened was the petitioner filed a direct appeal of the reinstated order to the Ninth Circuit, and that spawned Morales I, Morales II, which dealt with who has the jurisdiction to reinstate. Mr. Schwartz, maybe I can help you. The district court basically made that ruling because it found that the relief that your client was requesting was inextricably intertwined with his – his request to challenge the reinstatement of the removal order. Doesn't that squarely fit within the provisions in the Real ID Act to deprive us of jurisdiction? Well, she did both. I mean, she said the reason there's no jurisdiction is because you could have brought up all of those things in the petition for review, and so therefore, since it's inextricably linked to the order, I'm not going to listen to the order. I mean, that's ultimately the relief he's looking for. He wants to challenge the reinstatement of the removal order. Not really. You know, the argument is that it's antecedent to the order of removal. It's like the Montgomery Ward and the Duran cases, that we're saying that since he had this waiver pending for years, that before they could issue that reinstated order, he should have been able to file his adjustment of status in conjunction with the waiver that had been pending since, I'm not sure, the Clinton administration. It had been pending a long time. But we don't have jurisdiction to adjudicate requests to change status, do we? Well, I mean, I'm not — how is it any different than the class of — Particularly in the context of a habeas corpus proceeding. Right. But, I mean, my point was we had no forum to make it. I mean, it's not really any different than the class of aliens in Duran who had prior orders that were reinstated, and that same argument could have been made to them. Yet the panel there said, yes, you can bring this in a habeas to demonstrate Montgomery Ward reliance and those other kind of factors. So that was our conundrum, is that if we had done what the district court said, file a direct petition for review — Couldn't you bring a mandamus petition? Well, but mandamus is, you know, dilatory behavior of the government, right, where you had something pending, but we needed — you needed the adjustment, right? See, the problem is that I-212 can't exist in a vacuum. Right. I mean, what you wanted the district court to do was, in essence, order the agency to take action and adjust his status. Right. And we don't have jurisdiction to do that either. So how do we get out of the jurisdictional conundrum that we're in? That's what I'm trying to do. Well, it wasn't that. I mean, it was that we're trying — you know, part of the argument before the district court was, number one, that this is — we're trying to bootstrap or conflate or, say, it's analogous to the Duran-Montgomery Ward case, is that he had this I-212 permission to reenter after deportation pending for years, that that reasonably thought he could inoculate him from deportation, and that all he had to do — But he can't — but he can't get that adjustment made if the removal order has been executed, right? That's — that's why you want the removal order set aside. Right. But we were saying that he had a pending request for a waiver of that deportation years before, and it had been unadjudicated. Yes, I understand that, but the relief that you were seeking in the district court was two-pronged, was it not? First, you wanted to make sure that he didn't get removed, because if he gets removed, then he can't adjust his status. And so, in essence, what you wanted the court to do was to lift the removal order to stay it, I guess, and then order the agency to make a ruling on his request for adjustment of status. Isn't that what you were seeking? Basically, yes, which is no different than the class of aliens in Duran. That's exactly — I mean, the class of aliens in Duran were two separate groups, one group that had been here for one year, left, and returned, and the other were a group that had prior orders of deportation that had been reinstated, and the argument was that, you know, the Montgomery Ward reliance, that the change in the law should not be applied retroactively. And so I was trying to say that this ought to be the same concept, that he is functionally the same. Now, I truly am aware of Judge Kaczynski's very vigorous dissent in Garfious, and certainly my client did less in the real world than they did. I mean, he essentially sat on his I-212 for many years. I can see that, and that's a tough, inconvenient fact for me. But basically, if he had been — if they had tried to reinstate the order at any time prior to, you know, maybe after — pre-Acosta, after Acosta, before Duran, he could have simply just filed his adjustment with his already pending waiver. I mean, the regulations do not require perfect contemporaneity. If he had the I-212 pending, he could have filed the adjustment. So our position was, my guy is Duran, and that's what I wanted the Court to do. And I can reserve my rebuttal. Okay. Thank you. We'll hear from the government. Good morning. May it please the Court. My name is Elizabeth Stevens, and I represent the United States. In this case, Mr. Ramirez sought to mandate adjustment of status or adjudication of a form I-212 permission to reapply for admission. That form I-212 directly impacts whether or not his reinstated removal order would — the reinstatement of his removal order would be valid, because once his order is reinstated pursuant to statute, he cannot apply for any benefit under the institution of the Immigration and Nationality Act as far as in the United States. Now, that doesn't take all relief away from Mr. Ramirez, because Mr. Ramirez still has a valid I-130 petition that has been approved on his behalf. That's not a visa, however. That's just a petition. It gives him the status of being able to apply for a visa. And he can still go back to Peru and apply for an immigrant visa in Peru. He can apply for a I-212 waiver once he has left the United States. Mr. Ramirez is in a very interesting position because he is not subject to the absolute 10-year bar, because his reentries — we believe that there have been multiple reentries. It's hard to figure out exactly how many from the record. But all of those reentries were prior to 1996. And in a case of absolute non-retroactivity, because his reenters were prior to 1996, he is not 212a9c inadmissible, which would be subject to the permanent — the 10-year outside the United States can't apply until after 10 years are done. He is — he is subject to now what is new 212a9 — what is new 212a9a and was a former — another set of numbers and letters. We don't need to get into that. But my head is spinning. But as I understand your argument, there is still some relief he could get, but he could apply for it from outside the U.S. Right. And he can also apply — But he has to get a 212 waiver, right? He has to have the 212. Actually, I believe he has to have two 212s because he's inadmissible. Two 12s. Well, there's the 212-I, which is an actual waiver, and then there's the I-212, which is permission to reply for readmission after removal. So there's two different types of things that he would — he would need. He needs the 212-I. But what are the chances of getting those? It's — believe me, when I — when I first dealt with Duran-Gonzalez, I had lots of fun trying to keep all the 212s separate. But no, he will need two. One is because he has committed a crime involving moral turpitude. That was his first crime committed, I believe, after his removal order was entered, but before it was executed. And then he has several DUIs, including one in 2012. Those have not been found to be crimes involving moral turpitude. But when he applied for an immigrant visa in Peru back in the 90s, I believe, he was found to be 212 — 212-A2, having committed a crime of moral turpitude. And that was one of the reasons that that visa was denied. But he does have relief.  UNIDENTIFIED MALE SPEAKER Unlikely relief, but relief — UNIDENTIFIED FEMALE SPEAKER I'm sorry? UNIDENTIFIED MALE SPEAKER Unlikely relief, but relief — UNIDENTIFIED FEMALE SPEAKER Well, he still has to come — he still has to overcome his multiple identities, the multiple arrests, the three convictions, and his multiple reentries into the United States. He does have — he does have many things in his favor. UNIDENTIFIED MALE SPEAKER Assuming he jumps all those hurdles somehow — UNIDENTIFIED FEMALE SPEAKER I'm sorry, I didn't understand. UNIDENTIFIED MALE SPEAKER Assuming he managed to jump all those hurdles. Assuming he managed to get all those, he'd still be in line for a visa, right? He wouldn't get a visa right away. UNIDENTIFIED FEMALE SPEAKER He can apply before he leaves the United States under a program under 212J. He can apply for the — UNIDENTIFIED MALE SPEAKER Another 212. UNIDENTIFIED FEMALE SPEAKER Well, this is — UNIDENTIFIED MALE SPEAKER The good 212. UNIDENTIFIED FEMALE SPEAKER This is the I-212. But he can apply in advance under a program that the Citizenship and Immigration Service started. UNIDENTIFIED MALE SPEAKER I see. So the time could be running while you're waiting. UNIDENTIFIED FEMALE SPEAKER Right. He doesn't have to — right. And he doesn't have to wait 10 years. He can do this immediately because he's under the old program, not the — he's under the old reentry bar as opposed to the current one. But — UNIDENTIFIED MALE SPEAKER But none of that speaks to the question of whether district court had jurisdiction here. UNIDENTIFIED FEMALE SPEAKER It's the government's position that under the district court was entirely correct in finding that it lacked jurisdiction to make any ruling on the I-212 waiver interfering with the reinstated order. Insofar as any Montgomery Ward analysis, Petitioner cannot point to any — and if we're going with Montgomery Ward and we're going with the opinion in Garfious, what he would have to have is an agency opinion that made his relief — that he relied on to still be eligible for relief. Mr. Ramirez can't point to any specific statute or finding by the agency or ruling by the Torres-Garcia is 212A9C12. It doesn't apply to him. Morales — Fernandez, the — insofar as he relied on Contra Costa's — the Ninth Circuit decision, that was reversed by the Supreme Court in Fernandez-Vargas. There's no reliance there. He — Mr. — Mr. Ramirez cannot show any reliance on a decision of the board that is retroactively applied to him, and that's why Montgomery Ward doesn't apply here. If the Court has no other questions. Roberts. Thank you. Thank you. Very, very briefly. In terms of the Montgomery Ward reliance, our argument was that there was certainly agency practice for years that allowed the I-212s to be adjudicated in the United States without the multiple dancing 212s at the consulate. Our further argument is that we're saying that he's in the shoes of Duran because, just like the Duran people, he had the I-212 pending. I concede — I wasn't representing him — that he had not filed the adjustment, but if he had been — if the service had attempted to reinstate that order at any time until the Carthaginian decision of Duran, he could have filed, and he would have been in the — he could have filed the adjustment. It didn't have to be done completely contemporaneously, and then he would have been in the same shoes as Duran. So that's our Montgomery Ward reliance, that he sort of — you know, he predates Duran, and then he sort of becomes part of the Duran class, and that was — we'd submit the matter. Okay. Thank you. Thank you. The case is highly resuscitated.
judges: Piersol, Kozinski, Tallman